**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**DANNY B. CROWDER, JR.,**

               **Petitioner,**

**v.**                                         **Civil Action No. 3:23-CV-130
(GROH)**

**M. J. BAYLESS,**

               **Respondent.**

**REPORT AND RECOMMENDATION TO DENY
AS MOOT PETITION FOR HABEAS CORPUS RELIEF**

### I.    INTRODUCTION

On May 18, 2023, the *pro se* Petitioner, a federal inmate who was formerly incarcerated[1] at Morgantown FCI, in Morgantown, West Virginia, filed the above-styled habeas corpus action pursuant to 28 U.S.C. § 2241. ECF No. 1.[2]  Petitioner seeks an order which submits him to a Residential Reentry Center (RRC) or Home Confinement (HC), and which directs the Bureau of Prisons (BOP) to recalculate his sentence to reflect 1024 FSA credit days, and to issue a Projected Release Date (PRD) of October 19, 2021. ECF No. 1 at 8.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the

---

[1] According to the Federal Bureau of Prisons' inmate locator, Petitioner is now located at the Nashville RRM, with a listed release date of August 23, 2024. https://www.bop.gov/inmateloc/.

[2] ECF Numbers cited herein refer to case number 3:23-CV-130 unless otherwise noted.

District Court deny as moot and dismiss the petition for habeas corpus with prejudice.

## II.     PROCECURAL HISTORY

### A.     Conviction and Sentence in the Eastern District of Tennessee[3]

On October 22, 2013, a superseding indictment was returned in the Eastern District of Tennessee, case number 3:13-CR-137, which charged Petitioner and several codefendants in Count One of conspiracy to distribute 50 grams or more of a controlled substance. ECF Nos. 27, 31. Petitioner was also charged with one count of being a prohibited person in possession of ammunition in Count Nine. Id. On April 17, 2014,[4] Petitioner entered a guilty plea pursuant to a written agreement to both Counts One and Nine of the superseding indictment. ECF Nos 141, 168. Petitioner waived his right to appeal or collaterally attack his conviction and sentence. ECF No. 141 at 6.  On January 16, 2015, Petitioner was sentenced to an aggregate term of 168 months of incarceration, comprised of 168 months as to Count One, and 120 months as to Count Nine, with those sentences served concurrently with one another. ECF No. 339, 342.

### B.     Appeal to the Court of Appeals for the Sixth Circuit

Consistent with his plea agreement, the Petitioner did not file an appeal in the Circuit Court of Appeals.

---

[3] All CM/ECF references in Sections II.A., II.B., and II.C., unless otherwise noted, refer to entries in the docket of Criminal Action No. 3:13-CR-137, from the Eastern District of Tennessee, available on PACER. Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (Courts "may properly take judicial notice of public record); Colonial Penns. Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the contents of court records.'").

[4] Petitioner signed the Plea Agreement on March 4, 2014, but the document was not filed with the Court until March 5, 2014. ECF No. 141.

**C.    Motion to Vacate, Set Aside, or Correct Sentence Under § 2255**

Consistent with his plea agreement, the Petitioner did not file a collateral attack of his conviction or sentence.

**D.    Instant Habeas Corpus Proceedings**

On May 18, 2023, Petitioner filed a petition and exhibit for the writ of habeas corpus pursuant to 28 U.S.C. § 2241. ECF Nos. 1, 1-1. The petition alleges that Petitioner's sentence was improperly calculated by the BOP which failed to accurately state the Home Confinement eligibility date, and which failed to calculate a Projected Release Date (PRD) in contravention of BOP Policy Statement 5400.01. ECF No. 1 at 5 – 6. Petitioner contends that he exhausted his administrative remedies, but that no response was received from General Counsel to his BP-11. Id. at 7 – 8. As relief, Petitioner requests that the Court order the BOP: (1) "to submit Petitioner for RRC/HC forthwith"; (2) to issue a Projected Release Date of October 19, 2021; and (3) to recalculate Petitioner's sentence to reflect 1024 First Step Act (FSA) credit days. Id. at 8.

On August 3, 2023, Respondent filed a motion to dismiss, or in the alternative, for summary judgment and a memorandum and exhibits in support thereof. ECF Nos. 10, 10-1 through 10-8. Respondent contends that the BOP correctly calculated the Petitioner's sentence including the application of Federal Time Credits pursuant to the First Step Act, having accrued 1660 program days with 430 days of Time Credits toward prerelease custody (halfway house or home confinement) and 365 days towards early transfer to supervised release [ECF No. 10-1 at 5 – 7]. Respondent also argues that the Court cannot require the BOP to review and place an inmate in prerelease custody on any earlier date than that calculated by the BOP [Id. at 7 – 10]. Further, Respondent

contends that a BOP halfway house, "indicated it could accommodate [Petitioner], starting on August 30, 2023", and that Petitioner's halfway house placement date was August 30, 2023. ECF Nos. 10-1 at 10; 10-2 at 3; 10-3 at 2; 10-8.

Petitioner filed a response in opposition to the motion to dismiss on August 30, 2023.[5] ECF No. 16. Therein, the Petitioner argues that Respondent concedes the Petitioner has enough time credits to be eligible for RRC placement. Id. Further, Petitioner requests that the Court apply an additional 659 days "as a credit towards the term of supervised release, either by shortening the term of probation or by shortening the term of RRC placement." Id. at 2.

### III.  LEGAL STANDARD

#### A.      Review of Petitions for Relief

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and the Court's Local Rules of Prisoner Litigation Procedure, this Court is authorized to review such petitions for relief and submit findings and recommendations to the District Court. This Court is charged with screening Petitioner's case to determine if "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing Section 2254 Cases in the U.S. District Courts; see also Rule 1(b) Rules Governing Section 2254 Cases in the U.S. District Courts (a district court may apply these rules to a habeas corpus petition not filed pursuant to § 2254).

#### B.      Pro Se Litigants.

Courts must read *pro se* allegations in a liberal fashion and hold those pro se

---

[5]  The Petitioner's response to the motion to dismiss was filed with the Clerk on August 30, 2023, the same date he was apparently transferred to a Residential Reentry Center, however, the document was signed by the Petitioner on August 26, 2023. ECF No. 16 at 2.

pleadings "to less stringent standards than formal pleadings drafted by lawyers." <u>Haines</u>

<u>v. Kerner</u>, 404 U.S. 519, 520 (1972). Pursuant to 28 U.S.C. § 1915A(b), the Court is

required to perform a judicial review of certain suits brought by prisoners and must dismiss

a case at any time if the Court determines that the complaint is frivolous, malicious, fails

to state a claim upon which relief can be granted, or seeks monetary relief against a

defendant who is immune from such relief. A complaint is frivolous if it is without arguable

merit either in law or in fact. <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989) (superseded

by statute). The Supreme Court in <u>Neitzke</u> recognized that:

> Section 1915(d)[6] is designed largely to discourage the filing
> of, and waste of judicial and private resources upon, baseless
> lawsuits that paying litigants generally do not initiate because
> of the costs of bringing suit and because of the threat of
> sanctions for bringing vexatious suits under Federal Rule of
> Civil Procedure 11. To this end, the statute accords judges
> not only the authority to dismiss a claim based on an
> indisputably meritless legal theory, but also the unusual
> power to pierce the veil of the complaint's factual allegations
> and dismiss those claims whose factual contentions are
> clearly baseless.

490 U.S. at 327.

### C. Post-Conviction Remedies and Relief Including Habeas Corpus Petitions Filed Pursuant to 28 U.S.C. § 2241

Prisoners seeking to challenge the validity of their convictions or their sentences

are required to proceed under § 2255 in the district court of conviction. By contrast, a

petition for writ of habeas corpus, pursuant to § 2241, is intended to address the execution

---

[6] The version of 28 U.S.C. § 1915(d) which was effective when <u>Neitzke</u> was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

of a sentence, rather than its validity, and is to be filed in the district where the prisoner is incarcerated. "As we noted in *O'Brien* [*v. Moore*, 395 F.3d 499, 505 (4th Cir. 2005)], the 'essence of habeas corpus is an attack by a person in custody upon the legality of that custody' and 'the traditional function of the writ is to secure release from illegal custody.'" Obando-Segura v. Garland, 999 F.3d 190, 194 (4th Cir. 2021), quoting Preiser v. Rodriguez, 411 U.S. 475, 484, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Accordingly, a petition filed pursuant to § 2241 is the appropriate method for a prisoner to challenge the fact and length of his confinement, but generally not the conditions of that confinement. Preiser, 411 U.S. at 498 – 499. "[I]mmediate release or speedier release from [ ] confinement [is] the heart of habeas corpus." Id. at 498.

**D.    Motions to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted. The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007).

Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus, a well-pleaded complaint  must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim.  Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly,  it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and

Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff.  Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

### E.    Motions for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In applying the standard for summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of material fact."  477 U.S. at 323.  Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict."  Anderson, supra, at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a

party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248.

To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, supra, at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, supra, at 587. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. citing First Ntl. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 155, 1592 (1968). See Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). Although any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Matsushita, supra, at 587-88. Anderson, supra, at 248-49.

## IV.    ANALYSIS

"As is well known the federal courts established pursuant to Article III of the Constitution do not render advisory opinions. For adjudication of constitutional issues

9

'concrete legal issues, presented in actual cases, not abstractions' are requisite." United Pub. Workers of Am. (C.I.O.) v. Mitchell, 330 U.S. 75, 89, 67 S. Ct. 556, 564 (1947) (Internal citations omitted). Article III of the United States Constitution limits the jurisdiction of the federal courts to cases or controversies. "Article III's 'case or controversy' requirement prevents federal courts from deciding cases that are moot." Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698 (3d Cir. 1996) (citing Liner v. Jafco, Inc., 375 U.S. 301, 306 n. 3, 84 S.Ct. 391, 394 n. 3 (1964).

Therefore, "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormick, 395 U.S. 486, 496, 89 S.Ct. 1944 (1969). "If developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698–99 (3d Cir. 1996) (citing United States Parole Commission v. Geraghty, 445 U.S. 388, 397, 100 S.Ct. 1202, 1209 (1980) (The interest required of a litigant to maintain a claim under the mootness doctrine is the same as that required to attain standing)).

In his petition, it is clear that the Petitioner's ultimate goal was be released from the custody of the BOP to a Residential Reentry Center or halfway house sooner than his Projected Release Date. ECF No. 1 at 8. The BOP inmate locator website indicates that consistent with Respondent's representations, Petitioner is now located at the Nashville RRM, with a Projected Release Date of August 23, 2024.[7] Accordingly, even if the

---

[7] According to the "Public Information Inmate Data" sheet prepared by the Bureau of Prisons on August 1, 2023, the Petitioner's final statutory release date is August 23, 2025, but with 365 days of applied First Step Act credits, the Petitioner's Projected Release Date is August 23, 2024. ECF No. 10-3 at 2.

Petitioner were previously entitled to recalculation of his time credits for release to a Residential Reentry Center, he has already received that relief, and the case is now moot.

Further, to the extent that the Petitioner seeks an order which directs the BOP to credit him a set number of First Step Act credits, the District Court is unable to grant him relief. See Winegar v. Adams, No. 1:20-CV-246, 2021 WL 5629920, at *5 (N.D.W. Va. Nov. 3, 2021), report and recommendation adopted, No. 1:20-CV-246, 2021 WL 5629480 (N.D.W. Va. Nov. 30, 2021), citing to: 18 U.S.C. § 3632(d)(4)(A); and Jones v. Phelps, No. 1:21-cv-418-JFA-SVH, 2021 WL 3668885, at *8 (D.S.C. June 16, 2021), *report and recommendation adopted*, 2021 WL 3667396 (D.S.C. Aug. 17, 2021) ("The relevant statutes, as well as the heavy weight of authority, do not show that the BOP is obligated to apply petitioner's earned time credits prior to January 15, 2022 ... the court has no discretion to disregard the plain language of the relevant statutes."). Moreover, if the Petitioner earned more time credits than calculated by the BOP, such time credits may only be applied toward prerelease custody or early transfer to supervised release, not to reduce the term of supervised release. Petitioner seeks an order which: (1) credits him for "unsubmitted time" dating back to October 19, 2021; (2) directs the BOP to issue a Projected Release Date of October 19, 2021; and (3) directs the BOP to modify its records to reflect 1024 FSA credit days. ECF No. 1 at 8.

Rather, the application of Petitioner's First Step Act Time Credits is governed by 28 C.F.R. § 523.44. In subparagraph (b), that rule provides:

> Where otherwise permitted by this subpart, the Bureau may apply FSA Time Credits toward prerelease custody or early transfer to supervised release under 18 U.S.C. 3624(g) only if an eligible inmate has:
> (1) Earned FSA Time Credits in an amount that is equal to the remainder of the inmate's imposed term of imprisonment;

> (2) Shown through the periodic risk reassessments a demonstrated recidivism risk reduction or maintained a minimum or low recidivism risk, during the term of imprisonment; and
> (3) Had the remainder of his or her imposed term of imprisonment computed under applicable law.

In subparagraph (c), the Rule addresses prerelease custody and provides that:

> The Bureau may apply earned FSA Time Credits toward prerelease custody only when an eligible inmate has, in addition to satisfying the criteria in paragraph (b) of this section:
> (1) Maintained a minimum or low recidivism risk through his or her last two risk and needs assessments; or
> (2) Had a petition to be transferred to prerelease custody or supervised release approved by the Warden, after the Warden's determination that:
> (i) The prisoner would not be a danger to society if transferred to prerelease custody or supervised release;
> (ii) The prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and
> (iii) The prisoner is unlikely to recidivate.

Subparagraph (d) further dictates that:

> The Bureau may apply FSA Time Credits toward early transfer to supervised release under 18 U.S.C. 3624(g) only when an eligible inmate has, in addition to satisfying the criteria in paragraphs (b) and (c) of this section:
> (1) An eligible inmate has maintained a minimum or low recidivism risk through his or her last risk and needs assessment;
> (2) An eligible inmate has a term of supervised release after imprisonment included as part of his or her sentence as imposed by the sentencing court; and
> (3) The application of FSA Time Credits would result in transfer to supervised release **no earlier than 12 months before the date that transfer to supervised release would otherwise have occurred**.

28 C.F.R. § 523.44(d) (emphasis added). The regulation does not permit the application

of FSA credits to shorten a period of supervised release. Thus, even if this Court were to

grant Petitioner's request for 1,024 FSA credit days, pursuant to 28 C.F.R. § 523.44, those days could only be applied towards prerelease custody, or early transfer to supervised release. The Petitioner has already been released to a Residential Reentry Center (prerelease custody), so any additional FSA credits would not modify the Petitioner's status in that placement. Therefore, any recalculation of the Petitioner's FSA credits would be moot because such a recalculation would not alter the Petitioner's current placement, or shorten his term of supervised release. Accordingly, for the above reasons it is clear that the claims raised by the Petitioner are now moot, and the petition should be dismissed.

## V.    RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the petition for habeas corpus [ECF No. 1] filed on May 18, 2023, be **DENIED** and **DISMISSED WITH PREJUDICE**, and that Respondent's motion to dismiss filed on August 3, 2023 [ECF No. 10] be **GRANTED**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver**

**of de novo review by the District Court and a waiver of appellate review by the**

**Circuit Court of Appeals.** <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas</u>

<u>v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States</u>

<u>v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to all counsel of record by electronic means.

DATED:        September 7, 2023

/s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE